## LEITNER v. METZ.

1. A judgment obtained in 1867 and revived by default by order passed more than 20 years afterwards, but under proceedings to revive instituted within the 20 years, retains its lien, and a sale of the debtor's land thereunder is a valid sale.

2. Under summons to show cause why execution on a judgment (describing it) should not be renewed, and under order giving leave to issue a renewal execution on said judgment, the judgment is also revived.

3. A judgment obtained against intestate was legally revived under proceedings against the administrator of intestate's derelict estate, even though the heirs of intestate, who were in possession of all his lands, had no notice of such proceedings.

Before ALDRICH, J., Richland, April, 1889.

Action by C..E. Leitner against Caleb Metz and others. commenced in May, 1888. The judge charged the jury as follows :

1. "That the law presumes that a judgment has not been paid if it is less than 20 years old.

2. "That the service of the summons to renew execution having been served upon the administrator before 20 years had elapsed, and the order having been obtained renewing the execution, that these acts rebut the presumptions that the judgment herein had been paid, and that the administrator was the proper party defendant in said proceeding.

3. "That the heirs at law and distributees of James Turnipseed cannot claim the land in question by adverse possession, unless they can show a good legal independent title in themselves, or a better title than that of James Turnipseed, as against the title in this case made by the sheriff under the sale in the judgment herein, which was obtained against James Turnipseed in his life time.

4. "If the plaintiff has proved the judgment against James Turnipseed, the original *fi. fa.*, the renewal proceedings, the execution issued thereon, and the sheriff's deed to Andrew Crawford, attorney, and the latter's deed to C. E. Leitner, plaintiff herein, these matters are conclusive evidence of title in the purchaser as against the judgment debtor until the defendants show a better title, provided the jury are satisfied that James Turnipseed owned and possessed the land at his death.

Gentlemen of the jury, the question for you to decide is, was the judgment void by operation of law—that is, had more than 20 years elapsed. The only question which I feel called upon to decide is, is the legal proposition contended for by plaintiff correct and good law? Undoubtedly the law is exactly what Mr. McMaster contended for until the proceeding by *scire facias* was abolished; and now, it seems to me, under our decided cases, when the court renewed an execution, and papers were regularly served, parties were before the court; when it renewed the execution, it renewed the judgment; it gave the execution binding force under that judgment. It seems, to the ordinary mind, hard that a man's land shall be sold after a judgment has been left in the office against him for 20 years upon the renewal of this execution; but that is the law. And if the execution carried the title to the land by virtue of the sheriff's title, then the plaintiff has made out a good case. So the question for you to decide is, did the sheriff's deed to the plaintiff here give him title? I think, under our decided cases, that the execution being renewed, it was well sustained by the judgment, and it revived the judgment itself, and, therefore, it gave the sheriff the authority to levy and sell. That is the whole question. Your verdict will be, "We find for the plaintiff the land in dispute," and such damages as you may think proper; or, if you think differently, your verdict will be, "We find for the defendant."

*Mr. F. W. McMaster*, for appellants.

*Mr. Andrew Crawford*, contra.

March 25, 1890.  The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action to recover a tract of land in the County of Richland. The defendants denied that the plaintiff ever had title to the land—insisting that it had been purchased at sheriff's sale under a void execution, and that the sheriff's deed carried no title; and they also interposed the statute of limitations, and adverse possession for more than ten years. It appeared, by admission and proof, as follows:

On March 21, 1867, there was entered in the office a judgment entitled Faustina A. Bookter, executrix, v. James Turnipseed, for $2,092.32. About April, 1871, James Turnipseed, the defendant in execution, died intestate, leaving an only daughter, Mary Ann, who intermarried with Caleb Metz, and he, with his children, are the defendants. On December 20, 1884, the judgment was assigned to the plaintiff, C. E. Leitner, and, the execution having been returned unsatisfied on March 15, 1875, on February 25, 1887, the said Leitner, assignee, procured to be issued against E. R. Arthur, administrator of the derelict estate of the defendant in execution, James Turnipseed, deceased, a summons to show cause why the execution in the case should not be renewed according to law; and on April 25, 1887, Judge Norton granted an order, giving the plaintiff leave "to issue a renewal execution on said judgment." And, the execution having been issued, the sheriff sold under it the land in dispute as the property of the intestate, Turnipseed, made title to the highest bidder, Andrew Crawford, and he to the plaintiff May 21, 1888, who brings this action to recover the land. It was admitted in the record, that the land in dispute belonged to James Turnipseed in fee simple at the time of his death, and for 20 years previous thereto, and that Mary Ann Metz, wife of Caleb Metz, took possession thereof as heir at law of her father, and so held the land, as did her husband and children after her death.

The Circuit Judge held that the order to renew the execution had the effect "to revive the judgment itself." He also held that the summons to renew having been served before the 20 years had expired, was in time, although the order to renew was not actually granted until April 25, 1887, which was a few days after the expiration of 20 years, and that if the judgment was, as he

had charged, revived, the sheriff's deed carried good title to the plaintiff, and he had the right to recover.

The jury found for the plaintiff, and the defendants appeal to this court upon the following grounds : "I. Because his honor, Judge Aldrich, in effect, charged that the summons, dated February 1st, 1887, to renew execution in this action on a judgment dated March 21, 1867, an order made by Judge Norton April 25, 1887, as follows, &c., was a renewal of the said judgment, and' gave the plaintiff a lien on the land in question, after twenty years had expired. II. Because his honor failed to instruct the jury, that the judgment under which the plaintiff purchased the land was a void judgment, and had not been in any way acknowledged by the defendants, and that the sheriff's title thereunder was worthless. III. Because the renewal of the execution, and the land advertised for sale, was made before the defendants had any notice of the plaintiff having any claim against their ancestor. And the only resource left them was to attend the sale and give notice that the sale was illegal, as the judgment was null and void. IV. Because his honor, in effect, charged the jury, that a motion to renew execution on a judgment on which no payment or acknowledgment had been made for 20 years, when granted by a judge, *ipso facto* revived the judgment, and continued it beyond its statutory period. V. Because the pleadings show on their face that there was no petition or order made to renew the said judgment; and the lien of the judgment having expired, not being legally renewed, the execution had no force."

Exceptions 1, 2, 4, and 5, in different forms, make the point, that when the land was sold the judgment had no lien, for the reason that it was over twenty years old, was presumed paid, and had never been revived. The original judgment was entered on March 21, 1867—that was before the adoption of the Code (1870)—and, therefore, had an indefinite lien until presumed paid by the lapse of twenty years. It is true, that when the order of renewal was actually granted (April 25, 1887), the twenty years had elapsed. But the summons to renew had been issued on February 25, 1887, which was in time—within the twenty years—and then stopped the running of time to presume payment. We have just decided, in the cases of *Adams* v. *Richardson*,

*ante*, 139, and *Wood* v. *Milling*, *ante*, 378, that the commencement of the proceedings must control as to time, which is in accordance with the statute itself, that gave a lien to the revived judgment "from the date of the filing of such summons."

It is, however, claimed that the judgment was never revived, for the reason that the terms of the summons did not embrace the judgment, but were limited to "the renewal of the execution." This identical point was also decided in the case of *Adams* v. *Richardson*, *supra*, where the court said : "The judgment and execution on it are very closely connected—the execution is only process to enforce the judgment, and it cannot have active energy unless the underlying judgment has a lien. The law provides the same proceeding—'summons to show cause'—both to revive the judgment and renew the execution. The questions as to them are in one sense identical. The claim to renew the execution necessarily involves the right to revive the judgment. The order to renew the execution was entirely without force, unless it also revived the judgment," &c.

Exception 5 complains that the judgment was revived "without notice to the defendants." We suppose this means that the heirs in possession of the land should have been made parties. This affords still another illustration of the wisdom of the policy which requires that there shall be a responsible representative— executor or administrator—of the estate of every one who dies leaving property. This estate being left derelict, administration, as the law requires, was granted to E. R. Arthur, Esq., clerk of the court, against whom the proceedings were instituted to renew and revive the judgment. It was certainly unfortunate that the heirs did not have notice, but they were guilty of *laches* in not having administered, and we cannot say that the plaintiff had not the right to issue his summons against the administrator of his deceased debtor, to revive a judgment which had been recovered against him in his life-time. See *Bolt* v. *Dawkins*, 16 S. C., 198; *Alsobrook* v. *Watts*, 19 *Id.*, 544; *Roberts* v. *Smith*, 21 *Id.*, 458, 462; *Colvin* v. *Phillips*, 25 *Id.*, 232; *King* v. *Belcher*, 30 *Id.*, 381.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.