## WONDERLY v. LAFAYETTE COUNTY.

(Circuit Court, W. D. Missouri.   June 15, 1896.)

1. SCIRE FACIAS—MISSOURI STATUTE.
      Under the practice in Missouri, a writ of scire facias to revive a judgment, which has been assigned, is not demurrable because issued in the name of the assignor, but it is sufficient if the writ itself shows that it was issued on behalf of and to the use of the assignee, and permission may be given to amend the writ by striking out the name of the assignor where it is mere surplusage.

2. SAME.
      The right to a writ of scire facias to revive a judgment is not limited by the Missouri statute (Rev. St. Mo. § 6013), providing that a plaintiff may have the writ, at any time within 10 years, "to revive a judgment and lien," to cases in which the judgment which it is sought to revive is a lien on property.

3. SAME.
      The right to a writ of mandamus for the enforcement of a judgment is equivalent to the right to issue an execution thereon for the purposes of an application to revive the judgment on scire facias.

4. SAME.
      The revival of a judgment by scire facias, under the Missouri statutes, continues the right to enforce the same by execution or mandamus, or to bring an action thereon, and such rights do not cease upon the expiration of 10 years from the entry of the original judgment.

Christian & Wind, for plaintiff.
J. M. Lewis and Elijah Robinson, for defendant.

PHILIPS, District Judge.   On the 31st day of October, 1885, Francis D. Owings recovered a judgment in this court against Lafayette county on account of railroad aid bonds issued on behalf of Sni-a-bar township, in said county, for the sum of $11,791.45 and costs.   On the 28th day of November, 1885, said Owings assigned and transferred said judgment to Charles P. Wonderly.   This judgment remaining unsatisfied on the 25th day of October, 1895, said Wonderly caused to be sued out of the clerk's office of this court a scire facias against Lafayette county to revive said judgment.   On the return day of said writ the defendant appeared, and filed demurrer thereto.

The first question raised by the demurrer is that the application for and the writ should be in the name of the assignee of the judgment, Charles P. Wonderly, instead of Francis D. Owings, the assignor.   It may be conceded to defendant that under the Code authorizing the prosecution of actions in the name of the real party in interest the proceeding could be had in the name of the assignee with appropriate recitation in the writ of the fact of assignment. It is also true that the application filed herein for the writ is entitled in the caption "Francis D. Owings, to the use of Charles P. Wonderly," but it is the recognized rule that no complaint or formal petition is essential as the predicate of the writ.   The writ itself, when issued, performs the "double purpose of a writ and a declaration."   2 Freem. Judgm. § 444; Insurance Co. v. Hill, 17 Mo. App. 590.   There never was any requirement in the practice act of this state that a petition should be filed in order to sue out the writ of scire facias, until the act of February 15, 1865 (Sess. Acts 1865, p. 46); Ellis v. Jones, 51 Mo. 187.   As the provision of this act has since been dropped from the Revised Statutes, it no longer has any application in practice.   So it is sufficient if the writ itself shows it was issued on behalf of and to the use of the assignee of the judgment.   The writ itself, after reciting the recovery of the judgment, alleges its assignment and transfer to Charles P. Wonderly; and then proceeds as follows:

"Now, on behalf of the said Charles P. Wonderly, assignee of said judgment as aforesaid, it is suggested and made to appear to the said court that, although judgment therein was given, yet neither the said Francis D. Owings nor said Charles P. Wonderly, assignee, have received satisfaction of the debt, damages, costs, and charges awarded in and by said judgment; wherefore the said Francis D. Owings, for the use of said Charles P. Wonderly, assignee, has asked of us that a proper remedy be granted him in his behalf," etc.

Then the command of the writ is to Lafayette county to show cause, if any, why said judgment, etc., "should not be revived according to the force and effect of said judgment, to the use of the said Charles P. Wonderly, assignee, and further to do and receive what our said court shall then determine concerning it in this behalf."   I think the reasonable intendment of the writ is that it is designed to revive the judgment on behalf of the assignee.   And, inasmuch as it is permissible for the writ in mere matter of form to be amended (Freem. Judgm., supra), the court will allow the plaintiff here to amend the writ by striking out the words "Francis D.

Owings, to the use of," where they occur as above recited in the writ.

The other grounds of objection to the writ are more serious. The first contention of defendant is that, as the judgment in question is predicated of bonds issued in aid of subscription by a township in the defendant county to be paid by a levy of the county court on the assessable property within the township, there never was any lien created on the property of defendant; and that, as the object of the revival by a scire facias is to continue the lien and enforce the judgment by execution, no scire facias can issue alone to revive the judgment. The state statute (section 6013) declares that:

"The plaintiff, or his legal representatives, may at any time within ten years sue out a scire facias to revive a judgment and lien; but after the expiration of ten years from the rendition of the judgment no scire facias shall issue."

So the statute expressly authorizes the suing out of the writ to revive a judgment "at any time within ten years." The words "and lien" do not imply that the writ to revive the judgment is made to depend upon the existence of a lien. As said by Judge Thompson in Insurance Co. v. Hill, 17 Mo. App. 592:

"The object of the proceedings by scire facias may be twofold: First, to preserve the lien on the property of a debtor; second, to prevent the judgment becoming barred by the statute of limitation."

2 Freem. Judgm. § 442, says:

"Though the plaintiff's right to an execution still continues, and a revival by scire facias has not yet become necessary, and even while an execution is still in the hands of a sheriff, the plaintiff may sue out scire facias, and thereby revive his judgment."

The text is well supported by the authorities. Lambson v. Moffett, 61 Md. 426; Masterson v. Cundiff, 58 Tex. 472; Trapnall v. Richardson, 13 Ark. 543; Stille v. Wood, 1 N. J. Law, 118. The discussion in Lambson v. Moffett, supra, meets quite effectually much of the contention here made by defendant. The court adverts to the fact that at common law a judgment was presumed to be satisfied after a year and a day from its rendition, and, if the plaintiff failed to issue execution within that time, he could neither thereafter sue out a writ of execution nor a scire facias to revive the judgment, but would be driven to his action to recover on the judgment. This was the common law until the adoption of the statute of Westminster II. (13 Edw. I. c. 45), which authorized the writ of scire facias where the plaintiff desired to sue out an execution on a judgment after the lapse of a year and a day. "It was early held, however, that the remedy given by this statute was in addition to, and not in substitution for, the former remedy by an original action." "This statute," says Lord Coke, "is in the affirmative, and therefore it restraineth not the common law; but the party may waive the benefit of the scire facias given by this act, and take his original action of debt by the common law." The learned judge then proceeds to say:

"Now the period of twelve years is also the statutory period of limitations as to judgments (Code, art. 57, § 3), and the effect, therefore, of the construction contended for, would be to prevent the judgment creditor from reviving

his judgment by scire facias in order to keep it alive, and avoid the statute of limitations, and compel him to resort, for that purpose, to the less effective and more hazardous mode of issuing an execution within the twelve years, and renewing it, if not effective, from term to term, without break or intermission. Under a scire facias he may obtain a new judgment, which, in its turn, will be good for twelve years, and in like manner be capable of being revived by the same process, whereas, by the other mode, the least want of vigilance, or the slightest neglect on the part of the clerk to make the proper docket entries, may let in the plea of limitations. The former is, therefore, the simpler, safer, and more effective mode of keeping the judgment alive; and we discover nothing in the terms of the law, or the supposed reasons for its enactment, to make it imperative upon the court to give it a construction which will have the effect of depriving judgment creditors of the right to resort to the remedy best adapted for their security and protection, a remedy which existed when the statute was passed, and which it has not in express terms taken away."

It is further objected that the writ of scire facias is never granted where an execution cannot be issued on the judgment. This may be granted for the purposes of this case. But does it follow that, because an execution against Lafayette county on this judgment may be unavailing, the judgment cannot be revived by scire facias, to enable the plaintiff to avail himself, if he so desires, of the writ of mandamus? It is the recognized mode of procedure for the enforcement of such a judgment against counties, and integral parts thereof, such as township divisions, to issue, in form, writs of execution, and on return of nulla bona to resort to the writ of mandamus. And where the bondholder is by the statute expressly entitled to the levy of a special tax to pay his judgment, and the county court neglects its duty to make the assessment and to enforce the collection thereof, the execution may be waived, and the writ of mandamus may be had in the first instance. 2 Dill. Mun. Corp. (4th Ed.) § 856. The writ of mandamus in such case partakes of the nature and performs the office of the writ of execution, and is subject to the incident of an execution in respect of the period of limitation in which it may issue. Stewart v. Justices, 47 Fed. 482; U. S. v. Township of Oswego, 28 Fed. 55. So that, in effect, an execution may issue on the judgment herein, if revived.

It is finally suggested that a revival of this judgment would be fruitless to the defendant, inasmuch as no execution or mandamus could issue upon the judgment after the lapse of 10 years from the date of entry of the original judgment. It would be a sufficient answer to this suggestion to say, how the judgment, when revived, can be made available to the plaintiff, is not now before the court. But we had as well now, perhaps, as later express our views on this aspect of the case. The supreme court of this state, in George v. Middough, 62 Mo. 549, gives color to the contention that no execution could issue on a judgment more than 10 years after the rendition of the original judgment. But it is incredible that the court intended to give so broad a sweep to its utterance. In that case the original judgment was rendered in 1859, and it was revived from time to time until 1867, but execution did not issue thereon until 1872, under which the land in question was sold. It is quite evident, to my mind, that the object of the revival in that

case was to keep alive the lien of the judgment on the land. It was of this state of facts that the court said:

"The judgments were rendered in 1859, and the execution on which the sales were made and under which the plaintiff purchased were not issued until 1872, twelve years after the rendition of the judgments. Now, the statute provides that the plaintiff, or his legal representatives, may at any time within ten years sue out a scire facias to revive a judgment and lien; but after the expiration of ten years from the rendition of the judgments no scire facias will issue. The last judgment of revival on scire facias was in 1867, and its lien had expired before the executions here issued. The executions, therefore, derived no force from these liens or the revivals had under them," etc.

What the court did hold was that the execution, not having been issued during the three years next succeeding the last revival under the writ of scire facias, was a nullity. The broad language of the court must necessarily be constrained to the facts of the particular case and the subject-matter of the suit; otherwise, in the abstract, some of the expressions of the court would practically nullify the statute itself, and confound all authority and reason. Immediately following the section of the statute which directs that, if no sufficient cause be shown "against reviving the judgment the same shall be revived," is section 6020, which declares that "execution may issue upon a judgment at any time within ten years after the rendition of such judgment." Employed in the connection, it is found it refers unquestionably to a revived judgment as well as to the original judgment. The able and thorough discussion of this question by Judge Bakewell in Walsh v. Bosse, 16 Mo. App. 231, in which it is held that the proceeding by scire facias to renew a judgment, while a continuation of the original proceeding, so far partakes of the nature of an action that, in effect, the judgment therein is a new judgment, designed to avoid the statute of limitations, which then runs from its date, and not from that of the original judgment, is, in my humble opinion, conclusive in its reasoning and cited authorities. All the ancient doctrine built upon the office performed by the writ of scire facias established the proposition that, while it is a judicial writ, it is so far in the nature of an original proceeding that the defendant may plead to it, and that a release of all actions is a sufficient bar to the scire facias. And, as held by Mr. Foster in his work on Scire Facias (page 30), if the judgment be revived within the statutory period, "a new right is acquired by such judgment, from which new right the limitation begins to run, and not from the original judgment." See Obrian v. Ram, 3 Mod. 189; Farrell v. Gleeson, 11 Clark & F. 702; Farran v. Beresford, 10 Clark & F. 319. Judge Bakewell holds that there is no conflict in the conclusion reached by him and what was actually decided in George v. Middough, supra. The writ performs the function of an action to revive a debt, and, proceeded in to judgment, is a judicial determination that the debt remains unpaid. It is a proceeding in which the defendant must have due notice, and in which an appeal will lie from the judgment. The judgment of revival would be absolutely meaningless unless it put a stop to the running of the statute of limitations, and established a new initial point for its resumption. This ruling of the court of appeals has

never been contradicted by any court in this state since its delivery. It was obviously so correct, and so bottomed upon unquestioned authority, that no review of it seems to have been sought by the learned lawyers who opposed the conclusion of the court. And it has been recognized in practice by the profession in this state for the past 15 years.

The attention of the court is directed to the act of the legislature of this state approved April 9, 1895 (Laws Mo. 1895, p. 221, which took effect June 21, 1895). This act repeals section 6796, Rev. St., which provided a period of 20 years to create a conclusive presumption of the satisfaction of a judgment debt, and substitutes therefor a period of 10 years, and inhibits the issuing of an execution on any suit thereon after the lapse of 10 years. But it leaves intact the provisions of the statute respecting revivals by scire facias, and the effect of such judgment of revival. As the writ in this case was sued out within the 10 years allowed by statute, it is in conformity to law, and to deny it would be to wipe out a judgment debt of $11,000 and over, with accrued interest for 10 years.

Whether or not the plaintiff shall sue out his writ of mandamus on the revived judgment within the 3 years allowed for the operation of the lien or within 10 years is a question not presented by the demurrer, and therefore is not decided. The demurrer is overruled.